UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYTEE PRODUCTS, INC., a California corporation,<br><br>                                        Plaintiff,<br><br>        v.<br><br>HARRIS RESEARCH, INC., a Utah corporation; and DOES 1 through 20,<br><br>                                        Defendants.<br><br>and related cross actions. | Civil No.   06cv1854-CAB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '577 AND '892 PATENTS**<br>**[Doc. No. 109.]** |

## I. INTRODUCTION

Harris Research ("Harris") is the assignee of two patents for Device[s] for Enhancing Removal of Liquid from Fabric, U.S. Patent No. 6,298,577 ("the '577 patent"), and U.S. Patent No. 6,266,892 ("the '892 patent"). Mytee Products Inc. ("Mytee") is a manufacturer and distributor of vacuum devices and accessories for the professional floor cleaning industry. Harris alleges that Mytee infringes both these patents with its manufacture and sale of a product called the Banana Glider, models H931, H933, H934, H964 and H965 ("the Accused Devices"). The Mytee Banana Glider is an attachment for wand and rotary extraction vacuum devices designed to "increase extraction of water and reduce fatigue on the operator." [Mytee's Motion for Non-Infringement and Invalidity, Doc. No. 109-1, at 2:11-19.] Mytee

moves for summary judgment of non-infringement contending its Accused Devices[1] do not infringe the asserted claims of the '577 patent or the '892 patent either literally or under the Doctrine of Equivalents. Harris filed an opposition [Doc. No. 127], and Mytee filed a reply, [Doc. No. 136]. The Court held argument on April 27, 2009. For the reasons set forth below, Mytee's motion is **DENIED**.

## II.  LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

"Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). To meet this burden, the moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, then the burden shifts to the opposing party to show that summary judgment is not appropriate. *Id.* at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. Instead, it must designate specific facts showing there is a genuine issue for trial. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.  DISCUSSION

A determination of patent infringement is a two-step process, "wherein the court first construes the claims and then determines whether every claim limitation, or its equivalent, is found in the accused

---

[1] Mytee asserts that the five models of the Banana Glider all operate in substantially the same manner, so the motion for non-infringement addresses them collectively. [Doc. No. 109-1 at 2:18-19.] Harris does not dispute this representation in its opposition, so the accused products will be presumed to be identical with regard to the patent infringement analysis.

device." *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008). The first step is a question of law, and the second step is a question of fact. *Nystrom v. Trex Co.*, 424 F.3d 1136. 1141 (Fed. Cir. 2005). The patentee has the burden of establishing infringement by a preponderance of evidence. Infringement will not be shown unless the patentee demonstrates the presence of every element or its substantial equivalent in the accused device. *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1384-85 (Fed. Cir. 2005).

**A.    '577 Patent**.

The '577 Patent issued on October 9, 2001.[2] It is directed at a device for enhancing the removal of liquid from fabric utilizing mechanical and aerodynamic techniques. Harris alleges Mytee's Accused Devices infringe claims 5, 10, 11, 13 and 28. Claim 5 is dependent on Claim 1 and therefore incorporates all the elements of Claim 1 as well. Mytee moves for summary judgment asserting its Accused Devices do not infringe these claims either literally or under the doctrine of equivalents. [Doc. No. 109-1, at 8-11.]

**1.    Claim language**.

Claim 5 (incorporating Claim 1) recites:

    1.    A device for enhancing removal of liquid from fabric which compromises:

        a base plate having one or more apertures forming extraction nozzles; and

        means for forcing liquid in the fabric toward said apertures as said base plate is moved across the fabric, said means for forcing being attached to a bottom of said base plate.

    5.    A device in accordance with claim 1, wherein the means for forcing includes a barrier disposed behind the plurality of apertures.

Claim 1 requires a "means for forcing liquid in the fabric toward [the] apertures." When an element of a claim is expressed as a means for performing a specified function without the recital of structure, the claim is construed to cover the corresponding structure described in the specification and equivalents thereof. 35 U.S.C. § 112. The "means for" forcing liquid are described in the specification

---

[2] A copy of the '577 Patent is attached as Exhibit A to Harris' Answer and Counterclaim. [Doc. No. 5.]

as "barriers," the portion of the baseplate that faces and contacts the fabric, oriented and shaped in any fashion that will force any liquid in the fabric toward the apertures. ('577 Patent at 4:53-58.) The barriers are further described as constructed "such that each barrier has only a small surface area that will contact the fabric generally perpendicularly to the original orientations of such fabric." (*Id*. at 5:4-7.) Claim 5 specifically requires the inclusion of a barrier structure as the "means for" forcing liquid toward the apertures and requires it be on the baseplate located behind a plurality of apertures.

Claim 10 recites:

    10.    A device configured to be attached to a machine for extracting a liquid from a fabric, the device compromising:

        (a)    a baseplate with a bottom configured to face and contact the fabric,

        (b)    a plurality of apertures, formed in the bottom of the baseplate, forming extraction nozzles configured to withdraw fluid from the fabric there through; and

        (c)    at least one barrier, disposed on the bottom of the baseplate, configured to force liquid in the fabric towards the plurality of apertures.

Claims 11 and 13 are dependent on Claim 10, and therefore incorporate all the elements of Claim 10.

Claim 11 further recites:

    11.    A device in accordance with claim 10, where the [sic] at least one barrier has a straight elongated shape.

Claim 13 further recites:

    13.    A device in accordance with claim 10, where the [sic] at least one barrier is disposed behind the plurality of apertures.

Claims 28 recites:

    28.    A device configured to be attached to a machine for extracting a liquid from a fabric, the device compromising:

        (a)    a baseplate with a bottom configured to face and contact the fabric,

        (b)    a plurality of apertures, formed in the bottom of the baseplate, forming extraction nozzles configured to withdraw liquid from the fabric therethrough; and

1           (c)      a barrier, disposed on the bottom of the baseplate behind the plurality of apertures,

2                configured to force liquid in the fabric towards the plurality of apertures.

3       On April 24, 2008, the Court issued an order construing certain claim terms of the '577 patent

4 disputed by the parties. [Doc. No. 70.] The Court defined "aperture" to mean any holes, slots or

5 openings that serve as liquid extraction nozzles; and "barrier" as a solid material attached to the bottom

6 of the base plate that extends farther into the fabric than any other portion of the device.

7       **2.**     **Mytee's Non-infringement Argument on the '577 Patent**.

8       Mytee argues its products do not have at least one element of each of the asserted claims and

9 therefore cannot as a matter of law be found to infringe, either literally or under the Doctrine of

10 Equivalents. The undisputed evidence, Mytee contends, demonstrates the Accused Devices do not meet

11 the claim limitation of a barrier for forcing liquid in the fabric toward apertures, present in each asserted

12 claim. Furthermore, Mytee contends the undisputed evidence demonstrates the Accused Devices do not

13 meet the limitation of claims 10, 11, 13 and 28, of a plurality of apertures formed at the bottom of the

14 baseplate, and therefore cannot be found to infringe those claims on this separate ground.

15       **a.**     **The Accused Devices do not have Barriers**.

16       Mytee argues its Accused Devices do not have barriers for forcing liquid in the fabric toward the

17 apertures, an element required by each of the asserted claims 5, 10, 11, 13 and 28. Therefore, as a matter

18 of law, the Accused Devices cannot be found to infringe. In support of its motion, Mytee offers the

19 following statements:

20       The Accused Devices are designed to glide across the surface of a carpet. [Doc. No. 109-3 at

21 ¶16.]

22       The Accused Devices have a channel which runs across the middle of the device to allow for

23 airflow. [*Id*. at ¶17.]

24       The channel creates space between the extraction nozzles and the targeted surface. [*Id*. at ¶18.]

25       There is no opportunity for the material created by the channel to act as a barrier for forcing

26 liquid toward the nozzles. [*Id*. at ¶19.]

27       The portions of the Accused Devices which contact the targeted surface act as a buffer to allow

28 for airflow and do not force liquid into the apertures. [*Id*. at ¶20.]

The contact portions [of the Accused Devices] do not penetrate the surface of the carpet. [*Id*. at ¶21.]

The Teflon coating on the Accused Devices reduces the friction caused by contact with a carpeted surface and allows for easier movement along the surface. [*Id*. at ¶22.]

The design and the material of the Accused Devices serve the devices' purpose, which is to reduce the exertion required to operate a vacuum device. [*Id*. at ¶23.]

If the Accused Devices had barriers which extended into the fabric, it would result in creating greater friction, thus defeating one of the primary goals of the devices. [*Id*. at ¶24.]

In support of these statements, Mytee refers the Court generally to three exhibits lodged in support of its motion: Deposition Excerpts of LaBarbera, [Doc. No. 112-1]; Deposition Excerpts of Thompson, [Doc. No. 112-2]; and the October 22, 2008 Expert Report of Fritz Thompson, [Doc. No.115-6]. [Doc No. 109-3 at 5-8.][3]  Based on the testimony of these witnesses, Mytee contends the evidence is undisputed that the portions of the Accused Devices that come into contact with the fabric do not act as barriers forcing liquid toward the apertures for extraction.  The witnesses describe the structure and operation of the Accused Devices such that the contact portions (*i.e*., the edges of the channel on the bottom of the glide) do not penetrate the fabric but act as buffers for airflow.  Mytee therefore concludes the Accused Devices do not have the barrier element and cannot be found to infringe any of the asserted claims.

In opposition to Mytee's motion, Harris must designate specific facts showing there is a genuine issue for trial. *Berg*, 794 F.2d at 459. As the non-moving party, however, Harris' evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). Harris offers contradictory testimony from its expert Jonathan Richards, who opines that the Accused Devices have a barrier forcing liquid in fabric toward the apertures. [Doc. No. 127-1 at 5, Doc. No. 127-2 at 10.] Mr. Richards describes the barriers as consisting of one or both of the two ridges on the bottom portion of the body of the Accused Device, extending along the length of the body in front of and behind the apertures. Further he states these ridges extend farther into a fabric than

---

[3] Harris' motion to Strike, [Doc. No. 139], the "Amended Separate Statement of Facts,"[Doc. No. 135], submitted by Mytee as untimely and prejudicial is **GRANTED**. The Court considered only the "facts" initially submitted by Mytee in support of its motion. [Doc. 109-3.]

any other portion of the device when the Accused Devices are in use and compel the liquid toward the apertures. [Doc. No. 127-2 at 12-14.]

Harris also offers the testimony of Ed Durrant who stated that in his personal use of the Accused Devices, he observed the contact portions of Accused Devices to cause fluid to be pushed or collected in the apertures of the products. [Doc. No. 127-1 at 7, No. Doc.127-3.]

Mytee disagrees with the description of the Accused Devices and the analysis of their operation offered by Harris' experts and argues that the Court to disregard the testimony offered by Harris. Characterizing the evidence as the unsupported conclusions and "theories" of Harris' experts on how the Accused Devices might direct water toward apertures, Mytee contends it does not create a material dispute on the matter of infringement. [Doc. 136-1 at 15-17.] Mytee discredits the observations and conclusions of Harris' experts as unsupported by "quantitative analysis" and suggests they are inadmissible.[4] [*Id*. at 16.]   Whether the witnesses' opinions are supported by credible observations and whether objective tests or experiments were appropriate or necessary to support such opinions are determinations that will go to the weight given each opinion by the trier of fact for both parties' experts.  There is a genuine dispute as to whether the structure of the Accused Devices meets the "barrier" claims limitation. This is a question of fact for the jury and precludes summary judgment of non-infringement of the asserted claims in the '577 Patent.

**b.   The Accused Devices do not have a Plurality of Apertures Formed at the Bottom of the Baseplate.**

Mytee also argues its Accused Devices do not have a plurality of apertures formed at the bottom of the baseplate, an element of asserted claims 10, 11, 13 and 28.  Therefore, as a matter of law, the Accused Devices cannot be found to infringe these claims. [Doc. No. 109-1 at 11.]  In support of its motion, Mytee offers the following statement:

The Accused Devices do not include a plurality of apertures, formed in the bottom of the baseplate.  The apertures of the Accused Products [sic] are disposed above the bottom of the baseplate, not in the bottom. [Doc. No. 109-3 at ¶28.]

---

[4]It is noted that Mytee did not move to strike Harris' evidence as unreliable or have it excluded as inadmissible, or challenge the opinions of Harris' experts under *Daubert*.

In support of this conclusion, Mytee refers the Court generally to two exhibits lodged in support of its motion: Deposition Excerpts of Thompson, [Doc. No. 112-2];[5] and October 22, 2008 Expert Report of James Sakaguchi, [Doc. No.116-1]. [Doc No. 109-3 at 8.] Mytee's expert Mr. Sakaguchi opines that the apertures of the Accused Devices are not formed in the bottom of the baseplate, in that they are not in contact with the working surface, such as fabric. He describes the apertures in the Accused Devices are formed above the baseplate. Mytee therefore concludes the Accused Devices cannot be found to infringe asserted claims 10, 11, 12 and 28, all of which require that the apertures are formed in the bottom of the baseplate.

Again, in opposition, Harris must designate specific facts showing there is a genuine issue for trial, *Berg*, 794 F.2d at 459, and its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Harris offers contradictory testimony from its expert Jonathan Richards, who opines the Accused Devices have multiple apertures or holes along the length of the body. Each aperture extends from a bottom, exterior surface, which contacts a flooring surface during use to an interior surface of the body portion. [Doc. No. 127-1 at 8, Doc. No. 127-2 at 11-13.] Mr. Richards further opines there is no limitation that precludes the apertures from being located slightly above the extreme lower end of the barriers. [Doc. No. 127-1 at 9, Doc. No.127-5 at 8.]

The Court finds a genuine factual dispute as to the location of the apertures in relation to the bottom of the baseplate on the Accused Devices. Mytee's expert concludes they are not in the bottom of the baseplate because they are not in contact with the fabric and therefore do not meet the claim limitation. Figures 1 and 3 of the '577 Patent illustrate an embodiment of the patent that depicts the apertures and barriers formed on the bottom of the baseplate and the barriers extending farther from the baseplate than the apertures, such that the apertures would be raised above and not in contact with the fabric if no pressure was put on the device. Consequently, the conclusion that the apertures in the Accused Devices are not in contact with the fabric is not dispositive of whether they are formed in the

---

[5]The Court's review of the pages of deposition excerpts of Mr. Thompson provided in this exhibit revealed no testimony on the location of apertures and provided no evidentiary support for Mytee's argument.

bottom of the baseplate.  There is a dispute regarding whether the apertures of the Accused Device are in contact with the fabric in normal use, and whether the contact portion of the Accused Devices is the baseplate or a barrier on the baseplate.

The Court finds a genuine dispute as to whether the structure of the Accused Devices includes the limitation of apertures formed in the bottom of the baseplate.  This is a question of fact for the jury and precludes summary adjudication of non-infringement of Claims 10, 11, 12 and 28 of the '577 Patent.

**B.     '892 Patent**.

The '892 Patent issued on July 31, 2001.[6]  It is directed at a device for enhancing the removal of liquid from fabric.  Harris alleges Mytee's Accused Devices infringe claims 1, 9 and 17.  Mytee moves for summary judgment asserting its Accused Devices do not infringe these claims either literally or under the doctrine of equivalents.  [Doc. No. 109-1, at 12-13.]

**1.     Claim language**.

Claim 1 recites:

1.   A vacuum head device configured to withdraw a fluid from a carpeted surface, the device comprising:

(a) an elongated base plate configured to be movably disposed on the carpeted surface, and having a tapering cross section with a wider upper end and a narrower lower end configured to penetrate into the carpeted surface; and

(b) a plurality of apertures, formed in an array in the base plate, configured to withdraw the fluid under a vacuum force.

Claim 9 is dependent on Claim 8 and therefore incorporates all the elements of Claim 8.

Claim 9 (incorporating Claim 8) recites:

8.   A vacuum head device configured to withdraw fluid from a carpeted surface, the device comprising:

(a) an elongated base plate configured to be movably disposed on the carpeted surface; and

---

[6] A copy of the '892 Patent is attached as Exhibit B to Harris' Answer and Counterclaim.  [Doc. No. 5.]

    (b) a plurality of apertures, formed in an array in the base plate, configured to withdraw the fluid under a vacuum force.

9. A device in accordance with claim 8, wherein the base plate has a tapering cross section with a wider upper end and a narrower lower end configured to penetrate into the carpeted service.

Claim 17 is dependent on Claim 16 and therefore incorporates all the elements of Claim 16.

Claim 17 (incorporating Claim 16) recites:

16. A vacuum head device configured to withdraw fluid from a carpeted surface, the device comprising:

    (a) an elongated base plate configured to be movably disposed on the carpeted surface; and having a tapering cross section with a wider upper end and a narrower lower end configured to penetrate into the carpeted surface; and

    (b) a plurality of apertures, formed in an array in the base plate, configured to withdraw the fluid under a vacuum force.

17. A device in accordance with claim 16, wherein the plurality of apertures are formed at the lower end.

On April 24, 2008, the Court issued an order construing certain claim terms of the '892 Patent disputed by the parties. [Doc. No. 70.] The Court defined "lower end" to mean the bottom portion of the base plate that comes into contact with the fabric.

**2. Mytee's Non-infringement Argument on the '892 Patent**.

Mytee argues its products do not have at least one element of each of the asserted claims and therefore cannot as a matter of law be found to infringe, either literally or under the Doctrine of Equivalents. The undisputed evidence, Mytee contends, demonstrates the Accused Devices do not meet the claim limitation of base plate with a tapering cross section present in each asserted claim 1, 9 and 17. Furthermore, Mytee contends the undisputed evidence demonstrates the Accused Devices do not meet the limitation of claim 17, of a plurality of apertures formed at the lower end of the baseplate, and therefore cannot be found to infringe that claim on this separate ground.

///

**a.     The Accused Devices do not have a base plate with a tapering cross section**.

Mytee provides no evidentiary support for its contention that its Accused Devices do not include a base plate having a tapering cross section with a wider upper end and a narrower lower end, an element required by each of the asserted claims 1, 9 and 17.  Counsel argues the "base plate of the Accused Devices have a rounded cross section such that the upper end is relatively narrow, and then the cross section actually increases toward the middle section, and then narrows toward the lower end which is in contact with the carpet or fabric."  [Doc. No. 109-1 at 12.]  This description of the Accused Devices is presented without any citation to admissible testimony or other evidence.  It is counsel's argument for the conclusion that the Accused Devices do not, as a matter of law, literally infringe the '892 Patent.

Mytee further argues the base plate structure of the Accused Devices cannot function as equivalent to the claimed structure without ignoring the claims limitations.  "A rounded device which comes into contact with the carpet, would not serve the same function as one which tapers and penetrates as required in each of the asserted claims."  [*Id*.]  "To broaden a device which has a tapered lower end to one that has a rounded lower end will render the limitation of penetration into the carpeted surface meaningless."  [*Id*. at 13.]  This is also argument without citation to admissible testimony or other evidence[7] supporting the conclusion that the Accused Devices do not, as a matter of law, infringe the '892 Patent under the Doctrine of Equivalents.

Although Mytee offered <u>no</u> evidentiary support for its argument despite its obligation to do so, *see Celotex*, 477 U.S. at 323 (stating the moving party must identify the pleadings, depositions, affidavits, or other evidence that it believes demonstrates the absence of a genuine issue of material fact), Harris responded with the testimony of its expert Mr. Richards, who described the structure of Accused Devices as having a tapering cross-section.  "The [Accused Devices'] wider upper end is that portion of the body that is near the vertical center of the body and that is the widest portion of the body.  The [Accused Devices'] narrower lower end is that portion of the body that is near the bottom portion of the body and that is narrower than the center portion of the body.  The bottom portion of the body is that

---

[7]Mytee states Harris' own expert testified that a rounded surface would tend to glide across the top of the carpeted surface and not penetrate as much as a tapered one.  However, the actual testimony was not cited to or provided to the Court.

portion that contacts the flooring surface when the [Accused Devices are] in use." [Doc. No. 127-1 at 9-10; Doc. No. 127-2 at 15-17.]

Mytee responds that the Court should again disregard the testimony of Harris' expert, arguing his description of the structure of the Accused Devices as a tapering cross-section "cannot be deemed as a tapering cross section as illustrated in the drawings for the '892 Patent." [Doc. No. 136-1 at 19.] According to Mytee, the patent illustrations and a reading of the specification does not allow for Mr. Richards' "expansive" construction of the terms "tapering cross-section" and "wider upper end and narrower lower end." [*Id*. at 20.]

The scope of the patent, however, is not defined by the drawings in the specification and Mytee has not identified any portion of the specification in which the inventor stated the invention was limited to "the exemplary embodiments illustrated in the drawings." ['892 Patent, Col.2, ll.42-45.] The element of "base plate with a tapering cross section" as required by the asserted claims is not limited to the embodiment of that structure illustrated in the patent's specification as Mytee suggests.

The Court finds a genuine dispute as to whether the structure of the Accused Devices includes the limitation of base plate with a tapering cross section as required by the asserted claims. This is a question of fact for the jury and precludes summary adjudication of non-infringement of Claims 1, 9 and 17 of the '892 Patent.

**b.    The Accused Devices do not contain a plurality of apertures formed in the lower end.**

Mytee provides no evidentiary support for its contention that its Accused Devices do not include a plurality of apertures formed in the lower end of the base plate, an element required by asserted claim 17. Counsel argues that the "apertures of the [Accused Devices] are disposed above the bottom of the baseplate, not in the bottom, and thus do not contact with the working surface, such as carpet or fabric." [Doc. No. 109-1 at 13.]   The Court construed "lower end" to mean the bottom portion of the base plate that comes into contact with the fabric. [Doc. No. 70.]

For the reasons set forth above in Section A(2)(b), regarding whether the structure of the Accused Devices includes the limitation of apertures formed in the bottom of the baseplate with regard to the claims of the '577 Patent, the Court finds a genuine dispute as to whether the Accused Devices

meet this limitation of Claim 17 of the '892 Patent. This is a question of fact for the jury and precludes summary adjudication of non-infringement of Claim 17 of the '892 Patent.

## IV.  CONCLUSION

For the reasons set forth above, it his hereby ordered:

1. Mytee's Motion for Summary Judgment of Non-Infringement of the '577 Patent is **DENIED**.

2. Mytee's Motion for Summary Adjudication of Non-Infringement of Claims 10, 11, 13 and 28 of the '577 Patent is **DENIED**.

3. Mytee's Motion for Summary Judgment of Non-Infringement of the '892 Patent is **DENIED**.

4. Mytee's Motion for Summary Adjudication of Non-Infringement of Claim 17 of the '892 Patent is **DENIED**.

**IT IS SO ORDERED**.

DATED: May 8, 2009

_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge