UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYTEE PRODUCTS, INC., a California corporation,<br><br>                                                        Plaintiff,<br><br>          v.<br><br>HARRIS RESEARCH, INC., a Utah corporation,<br><br>                                                      Defendant. | Civil No.    06cv1854 CAB<br><br>**ORDER RE: PERMANENT INJUNCTION**<br><br>**[Doc. No. 252.]** |
| and related cross actions. | |

   This patent infringement action was tried to a jury, which returned a verdict in favor of Harris Research, Inc. ("Harris"), finding asserted claims of Harris' U.S. Patent Nos. 6,298, 577 ("the '577 patent") and 6,266,892 ("the '892 patent") infringed and not invalid. (Doc. No. 239.)  Harris now moves for a permanent injunction, under 35 U.S.C. § 283, against Mytee Products, Inc. ("Mytee") to prohibit Mytee from practicing these inventions going forward. (Doc. No. 252.)  Mytee filed an opposition. (Doc. No. 266.)  Harris filed a reply. (Doc. No. 273.)  The Court finds this motion suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1).  For the reasons set forth below the motion is **GRANTED**.

This Court "may grant an injunction in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. §283. The jury having found valid claims of the '577 patent and the '892 patent infringed by Mytee's Banana Glide product, Harris now requests that the Court enter a permanent injunction precluding Mytee from making, using or selling its Banana Glide products. Harris must satisfy a four-factor test before the Court, in its discretion, may grant a permanent injunction. Harris must demonstrate: (1) that it has suffered an irreparable harm; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

**(1) Irreparable Harm**

Based on the testimony at trial, Harris has established that Mytee's sales of the infringing product create an irreparable harm to Harris.

The inventions in this case were for devices that enhance the removal of liquid from carpets. The inventions are embodied in vacuum head devices used by commercial carpet cleaners to improve liquid extraction from carpets as part of the cleaning process. Harris owns the patented inventions. Ed Durrant, a representative at trial for Harris, testified that Harris is the parent company of the Chem-Dry franchise, a commercial carpet cleaning service. Harris develops carpet cleaning solutions and equipment, and provides them to its Chem-Dry franchises to use in their services. The commercial embodiment of the Harris patents is incorporated into the star assembly power head that is Chem-Dry's primary tool for cleaning carpets. (Doc. No. 231 at II-133 &135.)

Mytee designs and manufactures equipment for the carpet cleaning industry, including the device found to infringe the '577 and '892 patents—the Banana Glide. John LaBarbera, Mytee's owner, testified that carpet cleaning devices made by Mytee and Harris were similar. (Doc. No. 234 at V-35, 37-38.) He also testified that a company with a device that pulls more liquid, dirt and debris out of the carpet would have a competitive advantage. (*Id*. at V-57.)

///

///

The expert for Harris on damages, Scott Cragun, testified that Harris and Mytee are competitors. (Doc. No. 233 at IV-179.) The testimony was not contradicted or challenged at trial. The parties are not direct competitors, in that they do not compete for sales of the patented invention. Harris provides the patented technology to its franchisees—the Chem-Dry small business owners. Mytee sells the infringing devices to independent carpet cleaners. Harris and Mytee are indirect competitors in that their customers compete in the carpet cleaning market and the patented technology provides an advantage to users in that market. (*Id*. at IV-180.)

As a franchisor, it is financially important to Harris to help its franchisees have an advantage over other independent carpet cleaners. (*Id*. at IV-180.) By providing the patented technology to the competitors of Chem-Dry, Mytee reduces the Harris franchisees' competitive edge, and indirectly harms Harris financially. Further, it can reasonably be inferred that the unauthorized practice of the invention by Chem-Dry competitors generally diminishes the value of a Chem-Dry franchise as it undermines the beneficial access the franchisees enjoy to Harris' innovative technology.[1]

In its opposition to the entry of a permanent injunction, on the element of irreparable harm, Mytee relies heavily on expert pretrial analysis of the parties' competitive relationship prepared with regard to Mytee's abandoned claim for antitrust violations. (Doc. No. 266 at 5-8.) The antitrust claim was dismissed by Mytee, the references from the report of Mark Glick relied upon by Mytee in its opposition were not admitted into evidence, and Glick was not called at trial. There was no testimony presented at trial establishing that these manufacturers do not have a competitive relationship. The only testimony at trial regarding the competitive relationship between the parties was provided by Mr. Cragun who characterized the parties as competitors based on the marketplace competition between Harris' franchisees and Mytee's customers. Whether that indirect competition would have sustained Mytee's allegations of antitrust violation is not at issue. It is sufficient to demonstrate that Mytee's sale of the infringing devices impacts Harris financially and causes irreparable harm.

---

[1] Chem-Dry franchises do not have exclusive access to the patents. Harris also has a license with HydraMaster Corporation for the patented technology. (*Id*. at IV-177.) Hydramaster manufactures the cleaning machines for Harris that embody the technology, so Hydramaster is in a commercial relationship with Harris that benefits Harris. As part of that relationship, Hydramaster is licensed to use the patented inventions on one type of machine of a certain design. (*Id*. at IV-178.) Customers of the Hydramaster machines may end up competing with the Chem-Dry franchises, but it is limited by the scope of the Hydramaster license and controlled by Harris.

Mytee also argues that Harris delayed in seeking injunctive relief. (Doc. No. 266 at 4.) Because a permanent injunction cannot be sought until after a full determination on the merits, Harris did not delay in seeking a permanent injunction. Mytee contends, however, that because Harris did not seek a preliminary injunction, it delayed in seeking equitable relief and should not be afforded such relief now after a determination on the merits.

A preliminary injunction is "a drastic and extraordinary remedy that is not routinely granted." *Intel Corp. v. ULSI Systems Technology, Inc*., 995 F.2d 1566, 1568 (Fed. Cir. 1993). It involves a different analysis, including a showing of likelihood of success on the merits. *High Tech Medical Instrumentation, Inc., v. New Image Industries, Inc.*, 49 F.3d 1551, 1553 (Fed. Cir. 1995). Preliminary and permanent injunctions are two "distinct forms of equitable relief that have different prerequisites and serve entirely different purposes." *Lermer Germany GmbH v. Lermer Corp.,* 94 F.3d 1575, 1577 (Fed. Cir. 1996). Mytee provides no authority for its contention that Harris' decision not to seek preliminary relief should "weigh heavily" against granting equitable relief following a determination that Mytee is infringing the Harris patents. Mytee's delay argument is rejected.

The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent. *Acumed LLC v. Stryker Corp*., 551 F.3d 1323, 1328 (Fed. Cir. 2008). The relationship between Harris and Mytee is competitive with regard to the patented technology. Mytee's sales of infringing products to Chem-Dry's competitors disadvantages Harris' franchisees, and thereby harms Harris financially as well as diminishes the value of its franchise business and tarnishes the goodwill between the franchisor and franchisee. Allowing Mytee to continue as an indirect competitor in the carpet cleaning market will cause Harris irreparable harm.

**(2) Inadequate Remedy at Law**

Harris demonstrated that the harm resulting from Mytee's sales of infringing products is not remediable by a reasonable royalty. Harris does not generally license its technology. It provides the technology to its franchisees and has a limited license arrangement with its manufacturing entity, HydraMaster. These agreements have beneficial value to Harris beyond the income of a royalty payment. (Doc. No. 233 at IV-176-78.) There was no evidence that Harris has entered into license arrangements with any other entity allowing it to sell the patented technology to the carpet cleaning

industry. Harris' licensing history for these inventions supports a finding that it should not be required to license Mytee's future use of the patents.

Mytee argues that the award of a royalty payment of five dollars a unit for Mytee's past infringing sales demonstrates there is an adequate remedy at law to compensate Harris for continued use of the inventions. (Doc. No. 266 at 8.) The fact alone that a patent owner is compensated for an infringer's past sales by a royalty payment does not require a patent owner to enter a compulsory license with the infringer for the future. *See Acumed*, 551 F.3d at 1328 (awarding money damages for past infringement did not preclude a determination that no adequate remedy at law existed for future infringement).

A patent owner is entitled to damages adequate to compensate for infringement, in no event less than a reasonable royalty. 35 U.S.C. §284. Consequently, there is always a remedy at law for infringement. This statutory right to compensation for infringement, however, does not dictate that a patent owner must grant an infringer a license and receive only a royalty as compensation for the future. The award of damages for past infringement does not prohibit a patent owner from exercising its right to exclude in the future.

There is sufficient evidence that Harris and Mytee have a competitive relationship with regard to the products of the invention, and that Harris, with one limited exception, does not license this technology to competitors of its franchisees. Being required to license Mytee, so that Mytee can continue to sell to competitors of Harris' franchisees, will result in irreparable harm to Harris not remediable by a reasonable royalty.

**(3) Balance of Hardships between the Parties**

The balance of hardships to be considered is only between the patent owner and infringer. The effect of an injunction on others is irrelevant under this prong of the injunction test. *Acumed*, 551 F.3d at 1330.

The injunctive relief requested would prohibit Mytee from selling the Banana Glides. This is one of a variety of products sold by Mytee. (Doc. No. 234 at V-54.) Mytee provides no evidence or argument regarding the impact an injunction will have on the company. (Doc. No. 266 at 8.) The hardship Mytee would experience resulting from the elimination of this one product from its product

line appears to be "limited to the injury ordinarily expected when an injunction is imposed." *Commonwealth Scientific and Industrial Research Organisation v. Buffalo Technology Inc.*, 492 F. Supp. 2d 600, 606 (E.D. Tex. 2007)(mere hardship incurred in the process of ceasing operations is not sufficient).

Harris argues that it will be harmed if Mytee continues selling its competing product in the market. While some of the harm alleged is without evidentiary foundation; Harris provided evidence at trial that Mytee's ongoing presence in the market would hurt Harris' relationship with its franchisees and its reputation as a consistent enforcer of its patent rights. (Doc. No. 273 at 7.) "A marketplace reputation for enforcing one's patent rights [has a] value [] which cannot be quantified by monetary damages." *Fisher-Price Inc., v. Safety 1st, Inc.*, 279 F. Supp. 2d 526, 528 (D. Del. 2003).

Each party would experience some economic hardship resulting from the grant or denial of an injunction. Neither party demonstrated any significant economic hardship. Harris did present evidence of intangible harms to its reputation and business relationships. Given the complete lack of evidence presented by Mytee regarding any hardship to its business if it cannot sell the infringing product, the balance tips in favor of Harris.

**(4) Public Interest**

The public has an interest in enforcing valid United States patents. *Commonwealth Scientific,* 492 F. Supp. 2d at 607 (stating "the public has an interest in a strong patent system"). There are, however, "rare and limited circumstances in which an injunction would be contrary to a significant public interest such as health and safety concerns." *Id.* In this case there is no evidence that granting an injunction would cause harm or a disservice to the public.

The infringing products, carpet cleaning vacuum heads, "are not medically necessary items; nor do they possess any other exceptional characteristic or function such that their removal from the stream of commerce would harm the public." *Fisher-Price Inc.,* 279 F. Supp. 2d at 528. Mytee provided testimony that the infringing device is beneficial to carpet cleaners because it facilitates the cleaning process. (Doc. No. 234 at 40.) The removal of the infringing product from the stream of commerce may result in Mytee's customers looking for alternative vacuum head devices that may be less efficient, but it does not constitute such a harm to the public that it justifies denial of a permanent injunction.

///

**Conclusion**

Having considered the relevant briefing and the applicable law, the balance of the equities in this case warrants injunctive relief. Harris has demonstrated it will suffer irreparable harm that cannot be remedied by monetary damages. The balance of hardships weighs in favor of Harris and the public interest would not be harmed by granting an injunction. The motion for Entry of a Permanent Injunction is **GRANTED**.

The parties shall meet and confer on a proposed order that implements a permanent injunction and addresses the disposal of inventory, if any, of the infringing products. A proposed permanent injunction shall be submitted to the Court no later than seven days after entry of this order.

**IT IS SO ORDERED**.

DATED: January 20, 2010

_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge